FILED

2009 Jun-11  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DARLENE HOLLEY-JONES, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 7:08-CV-00257-LSC |
| | ] |
| TUSCALOOSA COUNTY, ALABAMA | ] |
| HEALTH DEPARTMENT, ALABAMA | ] |
| DEPARTMENT OF PUBLIC HEALTH, | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, filed by the Alabama Department of Public Health ("ADPH") on February 20, 2009, seeking to dismiss the two remaining claims in this action for discrimination and constructive termination.  (Doc. 45)  Darlene Holley-Jones ("Plaintiff") filed her Complaint in this Court on February 12, 2008 (Doc. 1), alleging that the Tuscaloosa County, Alabama Health Department discriminated against her by promoting a less qualified white employee instead of the Plaintiff, who is black.  On March 30, 2008, Plaintiff filed an

amended complaint correcting the name of the defendant to the ADPH.

(Doc. 10.)  The issues raised in the motion for summary judgment have been

briefed by the parties and are now ripe for decision.  Upon full consideration

of the legal arguments and evidence presented, ADPH's motion will be

GRANTED.

II.    Facts.[1]

Plaintiff is a 45 year old African-American.  In 1995, she graduated

from the University of Alabama at Huntsville with a bachelor's degree in

nursing.  Plaintiff also served in the military and worked as a staff nurse for

the Alabama Department of Youth Services, Chalkville campus.  In the latter

position, she claims to have had a LPN under her complete supervision.

The nursing classifications at ADPH, in order from lowest to highest,

are Staff Nurse, Nurse Coordinator, Nurse Supervisor, and Nurse Manager.

Plaintiff was on the hiring register for all Nurse Coordinator positions.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff began her employment for the ADPH at the Tuscaloosa County Health Department on November 6, 2000, as a Nurse II, or Staff Nurse. Upon her hiring, Plaintiff received 12 weeks of orientation which included visits of approximately two weeks to every type of clinic in the Tuscaloosa Country Health Department. Plaintiff's supervisor was Marilyn Archibald ("Archibald"), an African-American female, until Archibald's resignation in April 2006. Angela Dubose ("Dubose") was then promoted to Nursing Supervisor and served as Plaintiff's supervisor until Plaintiff left the Tuscaloosa Health Department in January 2007.

In January 2002, Plaintiff was promoted to a Nurse III. Though she remained a Staff Nurse, Plaintiff took the position of STD Clinic Program Coordinator, making her responsible for running the STD Clinic at the Tuscaloosa County Health Department. After the promotion, Plaintiff worked primarily in the STD Clinic. Though Plaintiff remained an employee of the ADPH, the STD Clinic was a "dedicated" STD Clinic, meaning its funding came from the STD Program located at the ADPH's Central Office in Montgomery. As it was a dedicated clinic, the STD Clinic was separate in some ways from the General Clinic. As such, Plaintiff was unable to rotate

in other clinics as freely as nurses who worked for the Tuscaloosa County Health Department because of her duties at the STD Clinic.

Only specially certified nurses can work in the STD Clinic, and Plaintiff does not know if any other employees at the Tuscaloosa County Health Department were certified in all of the areas required to work in the STD Clinic.  Furthermore, the ADPH's STD Program Protocol regarding patient treatment requires STD Clinic Personnel to stay after 5:00 p.m. in certain instances, such as when patients who had contacts with people infected by syphilis or HIV had not yet been treated.  Although Plaintiff's appraisals were positive, her April 2004 and November 2005 appraisals by Archibald indicated that she had limited exposure to areas outside of the STD clinic and should work to improve in these areas as time allowed.

On September 4, 2006, Plaintiff spoke to Dubose about an open Assistant Nursing Supervisor position in the General Clinic.  Plaintiff was informed that the position would not be filled for budgetary reasons.  In late October, however, Linda Robertson ("Robertson"), Area Administrator for Public Health Area 3 and the highest ranking administrator for the Tuscaloosa County Health Department, completed her budget and decided

to fill the vacant position.  Pamela Moody, the Director of Nursing for Tuscaloosa County and the counties that surround it, was notified of this decision and called for a professional register, which ranks suitable candidates for various positions, in late 2006.

Both Plaintiff and another nurse, Oneida Shea Lamb("Lamb"), a white female, were on the Nurse Coordinator register and therefore were at least minimally qualified for the position.  While Plaintiff worked at the STD Clinic, Lamb was a Staff Nurse in the General Clinic.  Plaintiff had a higher ranking on the register than Lamb, though rank on the register is not the sole factor in determining whether an applicant receives a promotion. While Plaintiff had a four year degree and had begun work with the ADPH in 2000, Lamb had only a two year degree and began work in 2002. Nevertheless, Lamb was hired for the position.

The General Clinic includes the following clinics: Family Planning; Women, Infants, and Children ("WIC"); Immunizations; Adult Health; Child Health; and TB.  According to the statement of Undisputed Material Facts in the parties' Joint Status Report, Moody "selected Lamb for the position because in Moody's considered business judgment, Lamb's work experience

in the General Clinic for the previous four and a half years, and current knowledge of protocol, made her the most qualified candidate for the position of General Clinic Nurse Coordinator.  Moody knew that Lamb received training at the other clinics, more particularly the family planning clinic, that would more than qualify her over Plaintiff for the General Clinic Nurse Coordinator."  As Plaintiff was a veteran, a veteran "passover" letter was required by the state.  This letter was issued, stating that Plaintiff was passed over in favor of Lamb and that "Ms. Lamb is a current employee and has several years experience as a Staff Nurse.  Therefore, she was determined to be the best qualified candidate."

Other than through Plaintiff's inclusion on the promotional register, Moody, while generally aware that Plaintiff wanted a promotion, was unaware that Plaintiff was interested in the particular General Clinic Nurse Coordinator position.  Plaintiff never told Moody, the decision maker, that she was interested in the General Clinic Nurse Coordinator position until after Lamb was promoted into the position.  Moody gave Plaintiff high praise for her work in the STD Clinic.  In the job she held, Plaintiff received excellent performance appraisals.

Plaintiff left her position with the ADPH's Tuscaloosa County Health Department on January 12, 2007 to take a new job as ADPH Nurse Surveyor. She began work with that position on January 16, 2007, earning a salary of $1998.40 semi-monthly, a wage increase over her previous salary at $1,903.00.  On February 12, 2008, Plaintiff filed a complaint with this Court alleging that the ADPH discriminated against her because of her race in promoting Lamb over her to the position of Nurse Coordinator.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*,

477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party."  *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

IV.   Analysis.

A.   Discrimination.

Plaintiff argues that the ADPH illegally discriminated against her based on her race by promoting a less qualified white nurse to the position of Nurse Coordinator for the General Clinic instead of her.  Because Plaintiff has not asserted that she has direct evidence of discrimination, we analyze these claims using the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  Under this

framework, the plaintiff bears the initial burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the plaintiff has demonstrated a *prima facie* case exists, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action]." *Id.* This burden is "exceedingly light. . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)(citation and internal quotation marks omitted)). Lastly, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's reasons were simply pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

To establish a *prima facie* case of discrimination, "[plaintiff] must show that (1) [she] was in a protected group; (2) [she] was not given the promotion; (3) [she] was qualified for the position and (4) someone outside

of the protected group was given the position." *Standard,* 161 F.3d at 1333

(citing *Coutu v. Martin County Bd. of County Commiss'rs*, 47 F.3d 1068,

1073 (11th Cir. 1995)).   Defendant does not dispute that Plaintiff is a

member of a protected class, that she was arguably minimally qualified for

the General Clinic Nurse Coordinator position, that she was on the Nurse

Coordinator register and that Lamb, a white female, was promoted into the

position.  Therefore, plaintiff has established a *prima facia* case.

The inquiry then turns to whether the ADPH can provide a legitimate,

nondiscriminatory reason for its employment decision.  The ADPH argues

that in the business judgment of Moody, Lamb's work experience in the

General Clinic for the four and a half years before she was promoted along

with her current knowledge of protocol made her the most qualified

candidate for the position of Nurse Coordinator.  Evidence provided by the

ADPH supports this claim.  The position of Nurse Coordinator required

knowledge of these clinics, as it was the primary duty of the Nurse

Coordinator "to be the subject matter expert in all the clinics that [make]

up the General Clinic."  (Doc. 46, Ex. 15.)  As such, the Nurse Coordinator

was responsible for answering subject matter questions from Staff Nurses in

the General Clinic, assuring the competency of the Staff Nurses in the various clinics, and filling in for any Staff Nurse in the General Clinic when they were absent.  *Id.*  Time sheets for the nearly five years leading up to Lamb's promotion in late 2006 show that Lamb rotated on a continuous basis throughout the clinics at the Tuscaloosa Country Health Department, including Family Planning, Child Health, Cancer Detection, WIC, Immunizations, Adult Health, TB, and STD Clinics.  (Doc. 46, Ex. 21.) Furthermore, Lamb's involvement in these clinics was significant, often amounting to hundreds of hours over the course of the year.  Plaintiff, on the other hand, spent the majority of her time in the STD Clinic.  According to her accounting sheets, from 2002 to 2006,[2] Plaintiff worked 7951.3 hours in the STD Clinic, 110.5 hours in Immunizations, 77.95 in Family Planning, and 5 hours in TB.  (Doc. 46, Ex. 14.)  In contrast, in just 2005 alone, Lamb worked 486.75 hours in Family Planning, 390.75 hours in STD, 263 hours in Immunizations, 61.75 hours in TB, 446.25 hours in Cancer, 31 hours in Maternity, and 26.75 hours in WIC.  (Doc. 46, Ex. 21.)  The ADPH has therefore met its burden in providing a non-discriminatory reason for hiring

---

[2] Plaintiff's accounting sheet for August 2006 was unavailable.

Lamb over Plaintiff.[3]

Plaintiff may nevertheless survive summary judgment by showing that ADPH's claim that Lamb was more qualified is mere pretext for racial discrimination.  It is not sufficient to "prove pretext by simply arguing or even by showing that [she] was better qualified than the person who received the position [she] coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citations omitted).  When a plaintiff argues that disparities in qualification show that employment decisions were motivated by race, the standard is that those disparities must be "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* (citing *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004); *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)).

Plaintiff points to a number of areas in which she argues that her

---

[3] Plaintiff concedes that the "Defendant has articulated a reason for promoting Lamb over the Plaintiff that, on its face, appears to be based on business-related considerations, and not race."  (Doc. 54-3 at 41.)

qualifications were superior to those of Lamb.  These include higher scores on the Certificate of Eligibles than Lamb; her four-year degree in comparison to Lamb's two-year degree; her two additional years of experience both as a registered nurse and as an employee of the Tuscaloosa County Health Department; her superior previous nursing and supervisory experience; her experience in various sections of the General Clinic from November 2000 to January 2002; her military services; and her training of Lamb for work in the STD clinic.  (Doc. 54-3 at 45-48.)  Plaintiff cannot survive summary judgment, however, merely by showing that the employer could have reasonably chosen to promote the Plaintiff or even that Plaintiff was in some ways more qualified than Lamb.  The Court does not "sit in judgment of the wisdom of an employer's selection," and "a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Springer*, 509 F.3d at 1350, 1349. In fact, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or

promotion decision on purely subjective criteria will rarely, if ever, prove pretext." *Id.* at 1349 (citations omitted).

Despite Plaintiff's iterations of her superior qualifications, she has been unable to show evidence that the ADPH's stated reason for promoting Lamb, her "work experience in the general clinic and current knowledge of protocol," was pretextual and a mask for discrimination. (Doc. 46, Ex. 4, Moody Depo. 18:12-14.) Plaintiff "may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Springer*, 509 F.3d at 1350. It is clear from the evidence that a reasonable employer could have determined that Lamb's recent and extensive experience in the General Clinic qualified her for the position over Plaintiff. Plaintiff has not met the burden necessary to show pretext. Therefore, the ADPH's motion for summary judgment is due to be granted as to discrimination.

B. Constructive Discharge.

In order to show constructive discharge, Plaintiff must show that, as an objective matter, "working conditions [became] so intolerable that a

reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004); *Thomas v. Dillard Dep't Stores*, 116 F.3d 1432, 1434 (11th Cir. 1997).  Plaintiff has failed to meet her burden.

Plaintiff contends that the discrimination she suffered and her hostile work environment compelled her to resign from her position with the Tuscaloosa County Health Department.  As discussed in detail above, Plaintiff has failed to show evidence of discrimination.  Furthermore, she has failed to show that an objective person would have viewed her work environment as hostile.  For example, Plaintiff claims that the statements of disbelief and sympathy that her African-American co-workers expressed to her after she failed to attain the Nurse Coordinator position were "[h]ostile because I didn't want to hear it.  I didn't want to hear it.  I didn't want to be in that atmosphere, it was a negative atmosphere."  (Doc. 46, Ex. 1, Holly-Jones Depo. 154:20-22.)  It is evident that, objectively, this atmosphere does not meet the level required for constructive discharge.[4]

---

[4] Plaintiff admits as much, stating, "[S]omeone else may not find it hostile."  (Doc. 46, Ex. 1, Holly-Jones Depo. 160:1-2.)

Therefore, since Plaintiff has failed to show discrimination or a hostile work environment that would compel a reasonable person to resign, the ADPH's motion for summary judgment is due to be granted as to constructive discharge.

V.      Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted as to all of Plaintiff's claims.  A separate order in conformity with this opinion will be entered.

Done this 11th day of June 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671